## The People of the State of Illinois, Appellee, v. Patrick Venard, Appellant.

### Gen. No. 5587.

1. BASTARDY—*when jurisdictional discrepancy cannot be availed of.* By giving a recognizance and going to trial without questioning the jurisdiction of the court, jurisdictional discrepancies are waived.

2. EVIDENCE—*when contents of subpoena cannot be shown.* The contents of a subpoena and the date when it was returnable cannot be proved orally when the witness has the subpoena in his possession but does not produce it.

3. EVIDENCE—*when offer of proof insufficient.* An objection to an offer of proof is properly sustained if part of such offer is incompetent.

4. INSTRUCTIONS—*when error cannot be complained of.* A party cannot complain of an error which he has caused the court to commit.

Bastardy. Appeal from the County Court of DuPage county; the Hon. CHARLES D. CLARK, Judge, presiding. Heard in this court at the October term, 1911. Affirmed. Opinion filed April 25, 1912.

CARNAHAN, ELSDON & SLUSSER, for appellant.

CHARLES W. HADLEY, for appellee; JOHN W. LEEDLE, of counsel.

MR. PRESIDING JUSTICE DIBELL delivered the opinion of the court.

The County Court of Du Page county adjudged that Patrick Venard is the father of the bastard child of Victoria Bedora. He appeals and contends that because of the absence from the record of a written complaint and of a warrant and return the County Court had no jurisdiction; that the court erred in refusing to admit certain proof offered by appellant; that the evidence of intercourse with Victoria Bedora by other men than appellant within the period when the child could have been conceived is such that appellant cannot be convicted of being the father; and that the verdict is against the clear preponderance of the evidence.

The record filed by appellant shows a transcript of a justice which recites a complaint by the mother of Victoria, a warrant issued for appellant, that he was brought into court thereunder, his release on bond, a continuance by agreement, and a change of venue to another justice. The transcript of the next justice, in stating the prior proceedings before the first justice, recites a complaint by the girl herself at a date which is evidently a mistake and then recites a hearing before such second justice, and an order binding appellant over to the County Court and a recognizance by appellant which recites a charge of bastardy against him by Victoria Bedora and that he was required to give

bond for his appearance before the County Court to answer the charge. Appellee, by leave of court, has filed an additional record containing the written complaint and the warrant and return and showing that they were omitted from the original record by mistake. No lack of jurisdiction appears from the entire record. There are discrepancies in dates in the two transcripts from the justices, but appellant gave the recognizance required and went to trial in the County Court and did not question the jurisdiction in that court, when those discrepancies might have been explained or corrected. His bare motion in arrest without points in writing, did not suggest to opposite counsel or to the court that an attack was being made upon the jurisdiction of the court because of technical defects. It is too late to question that jurisdiction here on those grounds.

Victoria testified that her last menstruation was during the first days of October, 1909; that she had intercourse with appellant twice some time later in that month; and that the child was born July 20, 1910. The attending physician testified that the child was fully grown and developed and should have been conceived about the middle of October, 1909. Victoria was corroborated as to the opportunity for intercourse between herself and appellant by the testimony of her sister. Appellant testified that he had never had intercourse with Victoria, but he admitted that he had been alone with her during that month on at least two occasions. Walter Koers, a witness for appellant, testified that he had intercourse with Victoria about the first week in October, 1909. On cross-examination he admitted that he testified before the justice that he had intercourse with her, either the last week in September or the first week in October, or the latter part of September or the first part of October. When his entire examination was concluded it amounted to this, that he had intercourse with her once in the first part

of September and again either the latter part of September or the first part of October. Victoria denied that she had intercourse with Koers in October. If her intercourse with Koers was all in September and her last menstrual period was in October, it is at least very unlikely that he is the father of this child, especially in view of the testimony of the attending physician above stated. William Hogan, a cousin and employe of appellant, testified that he had intercourse with Victoria in September and about two nights after Halloween in November. This had no special tendency to show that he might be the father. Victoria testified that she had never had intercourse with Hogan. There was a house in the neighborhood where the parties lived, owned by a family in Chicago, which house contained beds, bedding, a stove and cooking utensils, and the family sometimes came out and occupied this house. Appellant introduced evidence tending to show that on a certain night early in October, when that family was occupying the house, Victoria and her sister were there; that the next day the women of the family returned to Chicago and that the next two nights Victoria and her sister staid there with two men of that family, during the month of October, 1909. Victoria and her sister testified that they were not there at all, except one night when the women of the family were present. It is obvious that the state of the evidence on these subjects is such that we cannot say that the jury and the trial judge should have found that Victoria had intercourse with any other man than appellant during the period within which this child was conceived. Victoria was asked who was the father of her child, but an objection by appellant to the question was sustained. It was for the jury to say whether they believed Victoria or appellant on the main question. The opportunity was admitted. Just prior to the first occasion testified to by Victoria, there was much drinking of beer by appellant and his young

men associates, and, if appellant and his witnesses are to be believed, the standard of morality among these young people is very low. We cannot say that the verdict should have been the other way.

Appellant testified that in February, 1910, Victoria told him that she was in trouble, that she was in the family way and that Joseph Barron was the father of her child. Hawkyard, who had boarded with appellant, testified that he heard Victoria tell appellant that she was in the family way and that the father of the child was "Joe," but that he did not hear the last name. Victoria testified to several conversations with appellant about her condition, but denied that she named Joseph Barron. Appellant called an officer and sought to show by him service of a subpoena upon Barron to appear as a witness on the first day of the trial. It turned out that the officer had the subpoena at his home, and the court held that the contents of the subpoena and the date when it was returnable could not be proved orally when the witness had the subpoena in his possession. We hold that this ruling was correct. Appellant did not cause the officer to bring the subpoena, nor did he seek to have an attachment against Barron when he failed to appear on the first day of the trial.

There was undisputed proof that in January or the fore part of February, 1910, appellant and Edward Bedora, a brother of Victoria, went to a female nurse living in that neighborhood to see if she would undertake to relieve Victoria of the child, and that, after taking several hours to consider, the nurse told them that it would be murder at that late period and that she would not undertake it. The evidence of Victoria and of Edward was that thereafter appellant proposed that Victoria go to a certain doctor in Rockton, about 15 miles from Rockford, who had relieved women of children under such circumstances; that appellant said he would not go with her because he was a business

man and people might talk about it; that he asked Edward to go in his place and the latter refused, but afterwards consented; that appellant paid Victoria $29 in the presence of Edward to meet the expenses of that trip; that Edward and Victoria did go to Rockton and to the vicinity of the doctor's office; that Edward then told Victoria not to go in, and that it would be a penitentiary offense, and they did not visit the doctor but came home, and appellant told her to keep the money and she did keep it and bought a baby carriage with a part of it after the child was born. On cross-examination of Edward he was asked about a conversation at which his sister was not present but appellant and Reddick were present, and was asked if he did not then say to appellant that his sister was in trouble and he wanted to take her to a doctor and wanted to borrow money for that purpose, and if appellant and Reddick did not then talk it over and if Reddick did not then loan him $15 and if appellant did not then loan him $14 for that purpose, and each pay him the money then. He denied such a conversation, but testified that Reddick had at some other time told him that he furnished $15 of the $29 which appellant paid to Victoria. Appellant testified that he did not pay $29 to Victoria. Appellant sought to testify to this alleged conversation between Edward and appellant and Reddick, and, an objection being sustained, made an offer to prove that certain things were then said and done. An objection to the offer was sustained. The same offer and the same ruling were made when Reddick was testifying for appellant. It is contended that this ruling was erroneous. We are of opinion that appellant had a right to prove that instead of his paying Victoria $29 in the presence of her brother he loaned her brother $14 and Reddick loaned him $15 and each paid him the money when Victoria was not present, and that they did this on the application of Edward. But as to each witness the offer was a single offer and

it included in it an offer to prove the conversation which then took place. We are of opinion that such conversations when Victoria was not present were not admissible in behalf of appellant. A part of the offer as to each witness being incompetent, the court properly sustained the objection to the offer. Cressey v. Kimmel, 78 Ill. App. 27. The rule is thus stated in Jones on Evidence, 2nd Ed. sec. 894: "When the offer of testimony includes that which is admissible with that which is not, and the competent and incompetent are blended together, it is not the duty of the court to separate the legal from the illegal, but the whole may be rejected when objection is made." If appellant wished to prove the facts that then occurred without the conversation, he should have made another offer, and we must presume that if he had done so, that evidence would have been admitted.

At the request of appellee the court gave instruction No. 3 as follows:

"Although you may believe from the evidence that the prosecuting witness had sexual intercourse with another person about or near the time her bastard child might have been begotten, still such fact would not warrant the jury in finding the defendant not guilty, if you believe from a preponderance of all the evidence in the case that the defendant is the father of such bastard child."

Appellant requested the court to give instruction No. 17, as follows:

"The court instructs the jury that if you find from the evidence that any other man or men then the defendant had sexual intercourse with the complaining witness between September 12, 1909, and November 2, 1909, then you must find the defendant not guilty."

The court modified said instruction No. 17, and gave it as follows:

"The court instructs the jury that if you find from the evidence that any other man or men than the defendant had sexual intercourse with the complaining

witness between September 12, 1909, and November 2, 1909, and you find from the evidence no other facts or circumstances to determine in your minds who is the father of the bastard child, then you must find the defendant not guilty.''

Appellant contends that the court erred in giving No. 3 and in refusing No. 17 as offered and in giving No. 17 as modified. It is obvious that No. 17 as offered was incorrect. It fixed September 12 and November 2 as the dates within which sexual intercourse by the complaining witness with any other man would require a verdict that defendant was not guilty. The complaining witness testified that her last menstrual period before the birth of this child was early in October. It certainly would have been improper for the court to tell the jury, as a matter of law, that the fact of sexual intercourse by another man besides the defendant with the prosecuting witness nearly a month prior to her last menstrual period made it impossible to know who was the father of her child. That was a question of fact and not of law. Many circumstances could be shown which would tend to fix the paternity of the child, notwithstanding access by several men during the period when the child might have been conceived. This error was carried into the instruction as given, but appellant, having requested that error, cannot complain of it. We are of opinion that the modification of No. 17 and the giving of No. 3 were correct statements of the law and were properly given, unless it can be said that there was no evidence from which the jury could determine who was the father of the child in case they believed that the prosecuting witness had intercourse, not only with appellant, but also with some other man during the time when the child might have been begotten. We are of opinion that the court was not required to decide that there was no evidence of that kind, even though that evidence may have been slight. There was evidence that very soon

after the prosecuting witness found herself pregnant she informed appellant and sought his advice and that he gave advice and pecuniary assistance. These and other facts in proof tend to show that they both then believed defendant the father of the unborn child. Instruction No. 3 is approved in Hobson v. People, 72 Ill. App. 436; Altschuler v. Algaza, 16 Neb. 631, 21 N. W. 401, and State v. Pratt, 40 Iowa 631. It is said in Altschuler v. Algaza, *supra:* "If a doubt is raised as to the paternity of a bastard child by reason of the complainant's connection with other men at about the time it was begotten, other facts may be shown sufficient to satisfy the jury that the accused is the father. * * * The jury are to determine from all the evidence before them whether or not the accused is the father of the child." The ruling in People v. Lamberg, 160 Ill. App. 644, relied upon by appellant, was based upon the lack of evidence. We have grave doubts of the truth of the testimony of the witnesses, Koers and Hogan, and are of opinion that the jury might well disbelieve them.

The judgment is therefore affirmed.

*Affirmed.*